⊸AO106 (Rev. 10/03)  Affidavit for Search Warrant

United States Courts
Southern District of Texas
FILED

# UNITED STATES DISTRICT COURT

OCT 1 9 2009

**SOUTHERN** _____ DISTRICT OF _____ **TEXAS** _____

Clerk of Court

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)
Apple iPhone, 32GB, Serial Number
87938Y1V3NR, with SIM card

**APPLICATION AND AFFIDAVIT**

**FOR SEARCH WARRANT**

Case Number: H-09-828 M

I,  Deborah H. Gannaway _____ ,  being duly sworn depose and say:

I am  a(n)  <u>Special Agent of the Federal Bureau of Investigation</u> and have reason to believe
Official Title

that ☐ on the person of or  ☒ on the person, premises or property known as (name, description and/or
location)

1 Justice Park Drive, Houston, Texas, 77092

in the Southern District of Texas there is now concealed a certain person or property, namely
(describe the person, premises or property to be searched)

Apple iPhone, 32GB, Serial Number 87938Y1V3NR, with SIM card

which contains (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

evidence of the commission of a criminal offense, contraband, fruits of a crime or other items illegally possessed
concerning a violation of Title 18 United States Code, Section 1344
The facts to support a finding of probable cause are contained in the attached affidavit and made a part hereof.

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

October 19, 2009 _____                    at  Houston, Texas _____
Date                                                           City and State

Calvin Botley, United States Magistrate Judge _____          _____
Name and Title of Judicial Officer                              Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF

APPLICATION FOR SEARCH WARRANT

I, Deborah H. Gannaway, being duly sworn, hereby depose and state the following:

**A. Introduction**

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI).  I have been a Special Agent of the FBI since March 1995.  I am charged with the duty of investigating violations of the laws of the United States, collecting evidence in cases in which the United States is or may be a party in interest, and performing other duties imposed by law.  I have been assigned to investigate cases involving computers and internet fraud and have formal training and experience in the investigation of various criminal activities including wire fraud and bank fraud.  Based upon my training and experience, I am familiar with the means by which individuals use computers and information networks such as the internet to commit various criminal offenses, including violations of the federal laws as defined in Title 18, United States Code, Section 1344 (Bank Fraud).

2.      This affidavit is submitted in support of an application for a warrant to search an Apple iPhone, 32GB, Serial Number 87938Y1V3NR, as further described in Attachment A, fully incorporated herein.  As set forth herein, there is probable cause to believe that in that property there exists evidence of a crime, contraband, or other items illegally possessed, in violation of Title 18, United States Code, Section 1344 (Bank Fraud), which evidence is further described in Attachment A.

**B.      Relevant Statutes**

3.      This investigation is based on Title 18, United States Code, Section 1344, Bank Fraud, which provides that:

Whoever knowingly executes, or attempts to execute, a scheme or artifice -

(1)    to defraud a financial institution; or

(2)    to obtain any of the moneys, funds, credits, assets, securities, or other property owned

by, or under the custody or control of, a financial institution, by means of false or

fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

## C.    Probable Cause

4.    In conducting this investigation, Affiant has reviewed numerous records provided by a Special

Agent in Philadelphia, Pennsylvania, including a Criminal Complaint and Affidavit for the arrest of

PAUL GILFILLAN, also known as JOHN PAUL HAGGERTY, bank records, and letters of

complaint from PAUL GILFILLAN to law enforcement agencies in the United Kingdom. Affiant has

also interviewed bank personnel regarding frauds being perpetrated against their institutions. The

information contained herein is based in part on the interviews conducted as well as the documentation

that I have reviewed and does not constitute all facts known to Affiant.

5.    Affiant has learned the following information from an Affidavit in support of a Criminal

Complaint filed against PAUL GILFILLAN in the Eastern District of Pennsylvania, for a violation of

Title 18, United States Code, Section 1344, Bank Fraud:

6.    On April 8, 2009, SA Darin Murphy was contacted by a Senior Vice President of Continental

Bank, a bank headquartered in Plymouth Meeting, Pennsylvania, concerning a customer named PAUL

GILFILLAN who was attempting to defraud Continental Bank out of $2,300.82. The Vice President

told SA Murphy that on February 4, 2009, GILFILLAN entered the bank and opened a new account

2 of 15

with a small cash deposit.  GILFILLAN provided United Kingdom passport number 800267352 with

a date of birth of July 26, 1960, as identification.  GILFILLAN listed his address as 211 South Street,

#338, Philadelphia, Pennsylvania, with a telephone number of 215-825-8537.  SA Murphy investigated

that address and found it was a UPS location with mailbox service.  On March 16, 2009, a wire

transfer from Oanda Corporation, an online currency exchange service provider, in the amount of

$2,434.00, was posted to GILFILLAN's Continental Bank account.  On March 21, 2009,

GILFILLAN entered Continental Bank's Blue Bell branch and submitted a complaint claiming that

funds had been withdrawn from his account at ATMs in England without his authorization.

GILFILLAN provided a letter stating that he believed his bank card was stolen while he was distracted

during an ATM withdrawal on March 16, 2009.  GILFILLAN claimed that the five subsequent ATM

withdrawals were fraudulent and requested that the bank reimburse him.  GILFILLAN also provided a

copy of a Northumbria Police Report dated March 11, 2009, which purports to document his visit to

the Blyth police station in Northumberland, United Kingdom, to report the unauthorized withdrawals

from his account.  The investigating officer listed on that report is "T. Clarkson" and the incident number

is "392 11/03/2009."  While researching GILFILLAN's claim, Continental Bank employees searched

Fidelity National Information Services' (FNIS) FraudFinder database and located dozens of similar

reports regarding PAUL GILFILLAN throughout the United States.  Continental Bank sent

GILFILLAN a letter informing him that his claim was denied.  GILFILLAN responded with a letter

stating that the bank was violating the Electronic Funds Transfer Act and that he would take legal action

if he was not reimbursed.  The bank gave a copy of the complaint letter and police report which

GILFILLAN had provided to Continental Bank to SA Murphy.

7.      On April 15, 2009, SA Murphy contacted Diane Brown, a Senior Vice President of Allegiance Bank located in Bala Cynwyd, Pennsylvania. She told SA Murphy that on February 4, 2009, PAUL GILFILLAN opened an account at Allegiance Bank with a deposit of $50.00. GILFILLAN provided United Kingdom passport number 462940333 with a date of birth of July 26, 1960, as identification. On March 4, 2009, a wire transfer from Oanda Corporation, an online currency exchange provider, in the amount of $2,517.47, was posted to GILFILLAN's Allegiance Bank account. A little over a month later, GILFILLAN sumitted a complaint indicating that his debit card associated with the account had been stolen and several unauthorized withdrawals totaling $2,382.45 had been made. He also provided a copy of a Northumbria Police report dated March 11, 2009, stating that he had reported the incident. The investigating officer listed on that report is "T. Clarkson." Allegiance Bank agreed to reimburse GILFILLAN for the money that was withdrawn from his account and issued a temporary credit to his account. They also filed a claim with FNIS. Fidelity responded to the claim stating that they were aware of at least five other banks at which GILFILLAN had filed identical claims. In each case, GILFILLAN had submitted a letter detailing the same story about how his debit card had been stolen. He also provided the same police report in each case with only the date being different. FNIS provided copies of these documents to Allegiance Bank, which SA Murphy reviewed. After becoming aware of the fraud, Allegiance Bank removed the temporary credit from GILFILLAN's account before he had received his new debit card and was able to withdraw the funds. Brown visited the website for Northumbria Police and found no record of an Officer T. Clarkson. In addition, Brown e-mailed the Northumbria Police and later received a response confirming that they did not have an officer by that name and that the report was most likely fraudulent. Brown provided a copy of that e-

mail correspondence to SA Murphy, which he reviewed. GILFILLAN telephonically contacted

Brown to inquire why the credit had been removed from his account. GILFILLAN insisted that he was

a victim of fraud and was entitled to be reimbursed for his loss. When Brown informed GILFILLAN

that she had contacted the Northumbria Police and was waiting for confirmation of his police report he

did not press the issue any further. However, he did later enter another Allegiance Bank branch

(Berwyn branch) on March 20, 2009, and attempt to obtain the reimbursement. He told the teller that

he was the victim of fraud and he expected the money to be refunded.

8.      On April 16, 2009, SA Murphy contacted Mike Woods, Fraud Investigator for Beneficial

Bank, headquartered in Philadelphia, Pennsylvania, and Woods told SA Murphy the following

information. Woods had recently learned about a fraud being perpetrated against local banks by an

individual named PAUL GILFILLAN. Woods checked Beneficial Bank's customers and discovered

that GILFILLAN had already successfully executed the same scheme. On December 18, 2008,

GILFILLAN entered the Aramingo branch of the bank at 2514 Aramingo Ave., Philadelphia,

Pennsylvania, and opened a new account. GILFILLAN provided United Kingdom passport number

462940333 with a date of birth of July 26, 1960, as identification. GILFILLAN claimed to live at 211

South St., #338, in Philadelphia. On February 20, 2009, GILFILLAN wired $2,537.68 into that

account from another bank. Thereafter, GILFILLAN provided Beneficial Bank with a letter dated

March 3, 2009, explaining that his debit card was most likely stolen on February 26, 2009.

GILFILLAN also provided a report from the Northumbria Police dated March 4, 2009, stating that he

had reported unauthorized withdrawals from his account. Beneficial Bank had approved

GILFILLAN's request for reimbursement of approximately $2,200.00. On March 12, 2009,

GILFILLAN entered a Beneficial Bank branch and signed an affidavit attesting to his complaint. On April 1, 2009, Beneficial Bank credited GILFILLAN's account for the amount requested by his complaint. According to GILFILLAN's bank statements, Beneficial Bank credited him with $2,269.90 plus credits for fees of $55.38, all on April 1, 2009. On April 6, 2009, GILFILLAN entered a Beneficial Bank and withdrew the money that was credited to him (by withdrawal and check). Woods provided SA Murphy with a copy of the complaint letter and police report which GILFILLAN gave to Beneficial Bank. Woods advised SA Murphy that Beneficial Bank was, during this time, insured by the Federal Deposit Insurance Corporation.

9.      SA Murphy personally reviewed the six separate letters which he received from Allegiance Bank which were provided to them by their insurer, FNIS. These are letters which PAUL GILFILLAN provided to six different banks (including Allegiance Bank as noted above) detailing how his bank card was stolen. These letters are all dated on different dates between October 7, 2008, and March 11, 2009.

10.     There are eight different letters from the above sources - the six from Allegiance Bank and the two noted above from Continental and Beneficial Banks. In each letter, GILFILLAN uses the following wording to explain how he believed his card was stolen while he was making a withdrawal at an ATM: "At that time there was a man & a woman standing quite close behind me in line to use the ATM. During my withdrawal the woman dropped some money (coins) I bent down to help her pick them up and when I turned back to the ATM machine the cash & receipt were there and I retrieved them both. As I was in a hurry I assumed that I had already retrieved my card earlier and thought no more about it." This description is identical in all eight of the letters. SA Murphy also obtained and

reviewed the eight corresponding Northumbria Police reports that PAUL GILFILLAN gave to the eight different banks in support of his claim for reimbursement. These reports are also dated on different dates between October 7, 2008, and March 11, 2009. These reports all state that GILFILLAN contacted the Blyth police station in Northumberland, United Kingdom, to report fraudulent withdrawals from his account. Each report lists T. Clarkson as the investigating officer. Each report is worded exactly the same, and only the dates and incident numbers have been altered. In the case of Continental Bank, SA Murphy observed that GILFILLAN's letter was dated March 20, 2009, and he wrote that his ATM card was likely stolen on March 16, 2009. However, the corresponding police report that he provided is dated March 11, 2009, more than a week before GILFILLAN claimed that he first realized his ATM card was stolen. In the cases of these eight banks, each bank issued an ATM card to GILFILLAN on different dates.

11.     SA Murphy conducted a records check and found that PAUL GILFILLAN, a citizen of the United Kingdom, date of birth July 26, 1960, had a valid Florida driver's license from April 24, 2007, until July 18, 2007. SA Murphy obtained the photo associated with this driver's license. SA Murphy also obtained a copy of United Kingdom passport number 46294033 which is issued to PAUL GILFILLAN, date of birth July 26, 1960. This passport was provided by GILFILLAN when opening several bank accounts. The photo from this passport appears to match the photo from the Florida driver's license. Furthermore, SA Murphy obtained surveillance photos from Continental Bank, Allegiance Bank, and Beneficial Bank showing PAUL GILFILLAN visiting those banks. The individual in all of the surveillance photos appears to be the same person pictured on both the Florida driver's license and the United Kingdom passport of PAUL GILFILLAN. SA Murphy also examined

7 of 15

a copy of the passport presented by GILFILLAN to Continental Bank, number 800267352, and the person in this passport's photo, although a poor copy, resembles the person in the above photos.

12.    SA Murphy obtained and reviewed a report of an investigation conducted by Custom House, a foreign currency exchange company located in Victoria, British Columbia, Canada.  The investigation concerned the activities of PAUL GILFILLAN, Unit 5  Bentley Court Coniston Road, Blyth, Great Britain, Passport number 702285740.  The report states that GILFILLAN has been a client of Custom House since February 2004 when he first opened an online account in the name of Europa International Trading.  In October 2007 the name of the online account was changed to Samu Sports.  After the name was changed, GILFILLAN added 99 new beneficiaries to the account.  Each one was a unique bank account in GILFILLAN's name.  The banks were located throughout the United States, Canada, the United Kingdom, and Switzerland.  Since October 21, 2007, a total of $210,100.74 has been transferred in 108 different online transactions.  Suspicious of the high frequency of low volume transactions, Custom House e-mailed a list of questions to GILFILLAN on February 3, 2009, and received a response on February 4, 2009.  When asked about the nature of his business, GILFILLAN responded that his company sells motorcycle apparel and related goods.  His business strategy is to franchise the business in the United States and Canada.  GILFILLAN explained the frequent small transactions by writing that he had to "wire at least $1800 and in some cases $3000 to establish the franchise."  He also stated that in each case the beneficiary is himself because he has "found that it is far too expensive to set up a company for each franchise."  GILFILLAN's answers to these questions indicate that his account with Custom House is being used to transfer money into the victim bank accounts for subsequent withdrawal followed by a fraudulent request for reimbursement.  Each of the

"franchises" to which he refers is likely a victim bank. SA Murphy discovered an investigative report from a victim named Cardinal Bank located in Washington, D.C., that documents that an account opened by PAUL GILFILLAN at Cardinal Bank was in fact funded by a transfer of funds from Custom House. Cardinal Bank is not one of the eight banks noted above, but the report states that the account was opened on October 14, 2008, using United Kingdom passport 462940333. The customer faxed a letter to Cardinal Bank which has the same language as noted above, and provided a copy of the police report from the Northumbria Police.

13.      SA Murphy reviewed the results of a search for information performed by Continental Bank regarding PAUL GILFILLAN in the FraudFinder database that identified approximately 70 possible identity manipulations. In each of these instances a different financial institution has reported the use of the name PAUL GILFILLAN with a date of birth of July 26, 1960. However, the last three numbers of the associated Social Security number are different in almost every case. Each instance identified occurred between January 2008 and April 2009. Furthermore, the reporting financial institutions are in numerous different states including Pennsylvania, Florida, New Jersey, New York, Maryland, Virginia, Georgia, Arizona, Nevada, California, and Washington.

14.      Through grand jury subpoenas, further investigation in this matter has obtained records of additional banks at which a customer named PAUL GILFILLAN has claimed that his ATM card was stolen and used in the United Kingdom to make fraudulent withdrawals from his bank account. In each case, there are approximately three or four or five withdrawals from ATM machines in England in amounts ranging from approximately $150.00 to $500.00. In most cases, the customer GILFILLAN provided a letter describing the theft and a police report purporting to come from the Northumbria

Police Department, signed by "T. Clarkson." Of 58 banks to which GILFILLAN made this claim, in 49 of them the bank was able to provide to this investigation a letter submitted by GILFILLAN describing the circumstances of his ATM card and PIN being compromised, and in each of these 49 letters the language is identical to that described above in paragraph 10, with only the dates, bank, and account number changes. Of these 58 banks, 52 of them had the "Northumbria Police" report that GILFILLAN submitted in their file, and the reports were identical, with the dates changed, and signed by "T. Clarkson." At least one bank said that GILFILLAN made his claim the telephone. For a number of these banks, the claim was preceded by a wire transfer to GILFILLAN's account from Custom House.

15.     SA Murphy believes that GILFILLAN has recently continued to execute this scheme to defraud banks, but has done so using the name JOHN P. HAGGERTY. SA Murphy examined bank records from Citizens Business Bank and from Bank of the West, both in Southern California. These records reveal that on April 29, 2009, an individual claiming to be JOHN HAGGERTY opened accounts at each of these banks. On June 23 and July 1, 2009, HAGGERTY made claims to these banks that his ATM card had been stolen and fraudulently used in England. In each case, HAGGERTY submitted a letter and a police report from the London Police Department.

16.     In each of these two letters HAGGERTY submitted for these banks, HAGGERTY stated, "At that time there was a man & a woman standing quite close behind me in line to use the ATM. During my withdrawal the woman dropped some money (coins) I bent down to help her pick them up and when I turned back to the ATM machine the cash & receipt were there and I retrieved them both. As I was in a hurry I assumed that I had already retrieved my card earlier and thought no more about it."

This is identical to the language used by GILFILLAN in his letters to banks which he submitted to describe the circumstances of his ATM card and PIN being compromised.

17.    The two London Police reports submitted by HAGGERTY to these two California banks are nearly identical in language with the "Northumbria Police" reports submitted by GILFILLAN. Additional, SA Murphy examined the purported signature of the reporting officer for the London reports, "P. Lawrence," and compared it to the purported signature by "T. Clarkson" on the Northumbria Police reports.  These "signatures" are circular scrawls which look identical.

18.    At each of the California banks, the opening documents state that JOHN HAGGERTY displayed a United Kingdom passport number 463925351 as identification.  SA Murphy obtained a photocopy of United Kingdom passport number 463925351 from East-West Bank in Southern California, as part of the opening documents from that bank for an account opened by JOHN HAGGERTY on April 30, 2009.  SA Murphy compared the photo on that copy of the passport with the photo of PAUL GILFILLAN on United Kingdom passports number 46294033 and 800267352. Although not a clear photocopy, the HAGGERTY photo on the photocopy appears to be of the same person as the GILFILLAN photos.  Further, both GILFILLAN and HAGGERTY use the same date of birth, July 26, 1960.  This is the date of birth on each of these three passports.  SA Murphy therefore submits that there is probable cause to believe that PAUL GILFILLAN and JOHN HAGGERTY are one and the same person.

19.    From records obtained by subpoena, SA Murphy determined that on May 27, 2009, a person identifying himself as JOHN HAGGERTY and using United Kingdom passport number 463925351 for identification opened an account at the Liberty Bank branch in Middletown, Connecticut.

HAGGERTY later claimed that certain ATM transactions with his Liberty Bank card for this account which were completed in the United Kingdom were done without his knowledge or consent, and he claimed a loss of $2,378.93 with Liberty Bank. In support of this claim, HAGGERTY submitted a report supposedly prepared by the London Police, by Officer P. Lawrence, stating that HAGGERTY reported the theft of his ATM card to that police department. The language in this report is identical (except for relevant dates) as the London Police reports discussed above. SA Murphy compared bank surveillance photos of this JOHN HAGGERTY taken when he opened the account on May 27, 2009, with bank surveillance photos of PAUL GILFILLAN which were taken at Continental Bank when GILFILLAN was at that bank on March 21, 2009, to submit a complaint about his ATM card being fraudulently used. These photos all appear to be of the same person.

20.     From records obtained by subpoena, SA Murphy determined that on July 8, 2009, a person identifying himself as JOHN HAGGERTY and using United Kingdom passport number 463925351 for identification, opened an account at the Memorial Drive branch of Prosperity Bank in Houston, Texas. Upon learning of the bank account opening, SA Murphy immediately contacted Prosperity Bank and informed them of the HAGGERTY's above-described scheme to defraud banks, and that Prosperity Bank should expect HAGGERTY to make a claim that his ATM card had been stolen and used to make fraudulent withdrawals from his Prosperity Bank account. On or about September 30, 2009, Mike Harris of Prosperity Bank notified SA Murphy that HAGGERTY entered the Harrisburg branch of Prosperity Branch in Houston, Texas, and filed a claim alleging his ATM card had been stolen and subsequently used to make fraudulent withdrawals from HAGGERTY's Prosperity Bank account. HAGGERTY produced a United Kingdom police report and signed an affidavit with the details of the

alleged ATM card theft and use. SA Murphy thereafter immediately contacted the Houston office of the FBI to report the above information and the fact that HAGGERTY was very likely in the Houston, Texas, area attempting to perpetrate a fraud against banks in Texas. SA Murphy also provided to your affiant a Warrant for Arrest for PAUL GILFILLAN obtained in the Eastern District of Pennsylvania.

21.     Your affiant, based on the above information, contacted Special Agents at the George Bush Intercontinental Airport, who reported to affiant that an airline reservation in the name of JOHN HAGGERTY, United Kingdom passport number 463925351, date of birth July 26, 1960, had been made through an online reservation service, reserving a seat on KLM Airlines flight #662, departing Houston, Texas, enroute to Amsterdam at 3:30 p.m. on Sunday, October 4, 2009. At the time of GILFILLAN's arrest he had in his possession a boarding pass for KLM Airlines flight #662 in the name of PAUL HAGGERTY, as well as United Kingdom passport #643925351 in the name of JOHN PAUL HAGGERTY.

22.     At approximately 2:18 p.m. on Sunday, October 4, 2009, your affiant and other law enforcement officers arrested PAUL GILFILLAN, also known as JOHN PAUL HAGGERTY, at the George Bush Intercontinental Airport. At the time of his arrest GILFILLAN was in possession of an Integral 4GB thumb drive, two (2) SanDisk card readers, six (6) SIM cards, a Sony laptop computer with a cracked screen, Model PCG-4HBP, Product Key R3X26-8D7W98BK76-VPJBX-J72DB (no serial number located), an Apple iPhone, 32GB, Serial Number 87938Y1V3NR (with SIM card), and a Nokia N-95-1 cellular telephone, #356962/01/754569/1.

23.     It is affiant's experience that computer(s), computer hardware, printers, scanners, software, related documentation, passwords, data security devices, thumb drives, SanDisk card readers, SIM

cards, cellular telephones, and any device capable of internet access may be instrumentalities of and/or contain evidence related to bank crimes. The following definitions apply to the terms as set out in this affidavit and attachment:

a.  Computer hardware consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical or similar computer impulses or data. Hardware includes any data-processing devices (including but not limited to central processing units and internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, cellular telephones and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

b.  Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

**D.  Description of the Property to Be Searched:**

24.  Apple iPhone, 32GB, Serial Number 87938Y1V3NR, with SIM card.

**E.  Conclusion**

25.  Based upon the information above, I have probable cause to believe that PAUL GILFILLAN, also known as JOHN PAUL HAGGERTY, has committed bank fraud, in violation of Title 18, U.S. Code, Section 1344, and has utilized the internet and various computers and/or digital storage devices in perpetrating this crime.

26.  Based upon the information above, I have probable cause to believe that in furtherance of his scheme to defraud numerous U.S. banks, PAUL GILFILLAN, aka JOHN PAUL HAGGERTY,

has conducted his fraudulent scheme using computer(s), telephone(s), and other devices capable of electronic transmission and storage of data, specifically the item listed in paragraph D (Description of the Property to be Searched) and that on that device there exists evidence of a crime, contraband, or other items illegally possessed, in violation of Title 18, United States Code, Section 1344 (Bank Fraud).  By this affidavit and application, I request that the Court issue a search warrant authorizing agents to search the Apple iPhone, 32GB, Serial Number 87938Y1V3NR seized upon GILFILLAN's arrest, following the search procedure described in Attachment A, which is fully incorporated herein.

Further your Affiant sayeth not.

Special Agent Deborah H. Gannaway
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me

this 9th day of October, 2009.

United States Magistrate Judge

15 of 15

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

## AND

## PROCEDURES FOR SEARCHING PROPERTY

1.    **Property to be Searched**

   Apple iPhone, 32GB, Serial Number 87938Y1V3NR

2.    **Procedures for Searching Property**

   The search procedure of the electronic data contained in computer operating software or memory devices may include the following techniques:

   a.    surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

   b.    "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

   c.    "scanning" storage areas to discover and possibly recover recently deleted files;

   d.    "scanning" storage areas for deliberately hidden files; or

   e.    performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.